UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALTRUIST, LLC, an Arizona limited liability company, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) ) |
| MEDEX PATIENT TRANSPORT, LLC, a Tennessee limited liability company, KLEIN CALVERT, KYLE CALVERT, | ) ) ) ) ) No. 3:17-cv-01179<br>Chief Judge Crenshaw |
| Respondents, | ) ) ) |
| v. | ) ) ) |
| SUSAN K. BIGELOW, JOANNA MILKOVICH, | ) ) ) ) |
| Counter-Respondents. | ) |

# MEMORANDUM OPINION

Pending before the Court are conflicting requests: (1) Petitioner's Petition to Confirm Arbitration Award (Doc. No. 1); and (2) Respondents' Motion to Vacate Arbitration Award (Doc. No. 12). For the reasons that follow, the arbitration award will be confirmed.

## I. Background

On October 23, 2014, Altruist, LLC and Medex Patient Transport, LLC (doing business as Caliber Patient Care) ("Medex") entered into a Franchise Agreement relating to the provision of emergency medical transportation services. The Franchise Agreement provided that all disputes, except for those involving intellectual property rights or claims for injunctive relief, were to be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American

1

Arbitration Association ("AAA").

Altruist filed a demand for arbitration on May 27, 2016, alleging intentional misrepresentation/fraud in the inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act ("TCPA"), and misrepresentation by concealment. It sought rescission, punitive damages, and attorney's fees.

The claims were arbitrated from April 25 through 28, 2017. On July 5, 2017, an AAA arbitrator issued an Interim Award that resolved all claims, except the award of attorney's fees, which required further briefing as to the amount.

In the Interim Award, the arbitrator found in favor of Altruist and its co-owners, Susan K. Bigelow and Joanna Milkovich, on three grounds – breach of the contract, fraudulent inducement, and violation of the TCPA. He also found rescission under the TCPA to be appropriate, and awarded $235,611.71 (representing damages, interest, AAA fees, and the arbitrator's fees and expenses), of which $29,968.94 had already been paid. The award was assessed against Medex d/b/a Caliber and its owners, Klein and Kyle Calvert.

The Final Award ("Award") assessing an additional $211,015.81 in attorney's fees and costs was rendered on August 14, 2017, making the total $416,758.58. Respondents seek to vacate the award on the ground that the arbitrator manifestly disregarded the law in various respects. Altruist requests confirmation of the award, attorney's fees for having to defend this action, and post-judgment interest at a rate set by Tennessee statute.

## II. Standard of Review

"The Federal Arbitration Act ('FAA') expresses a presumption that arbitration awards will

be confirmed." Nationwide Mut. Ins. Co. v. Home Ins. Co., 429 F.3d 640, 643 (6th Cir. 2005). Towards that end, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." Samaan v. Gen. Dynamics Land Sys., Inc., 835 F.3d 593, 600 (6th Cir. 2016).

The FAA itself provides four grounds for vacating an award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10.

Some circuits have recognized "manifest disregard of the law" as a further ground for vacatur of an arbitration award, either as a collective shorthand for the enumerated grounds, see McCarthy v. Citigroup Glob. Markets Inc., 463 F.3d 87, 91 (1st Cir. 2006), or as an independent factor, see Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003). In Hall St. Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 585 (2008), however, the Supreme Court cautioned against treating this "supposed addition . . . as the camel's nose" for further expansion.

Since Hall Street, the Sixth Circuit has stated in *dicta* that "[w]hether 'manifest disregard of the law' may still supply a basis for vacating an arbitrator's award as 'a judicially created supplement to the enumerated forms of FAA relief . . is an open question.'" Samaan, 835 F.3d at 600. Nevertheless some panels have "held that despite the Supreme Court's language in Hall Street,

the 'manifest disregard' doctrine remains a viable ground for attacking an arbitrator's decision." Marshall v. SSC Nashville Operating Co., LLC, 686 F. App'x 348, 352 (6th Cir. 2017).

In Coffee Beanery, Ltd. v. WW, L.L.C., 300 F. App'x 415, 418-19 (6th Cir. 2008), for example, the court considered "manifest disregard," observing that Hall Street addressed efforts by "private parties to supplement by contract the FAA's statutory grounds for vacatur," and that, while "the Supreme Court significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10, . . . it did not foreclose federal courts' review for an arbitrator's manifest disregard of the law." Likewise, in Grain v. Trinity Health, Mercy Health Servs. Inc., 551 F.3d 374, 380 (6th Cir. 2008), the Sixth Circuit considered "manifest necessity" as a factor, noting that, while the Supreme Court's "reference to the 'exclusive' statutory grounds for obtaining relief casts some doubt on the continuing vitality of [this] theory" as an additional factor, the "Supreme Court suggested manifest disregard" could still be used as a "shorthand" for the enumerated factors.

### III. Legal Discussion

In light of the uncertain legal landscape, the Court considers whether the Arbitrator manifestly disregarded the law in entering the Award, which is the only basis for vacatur advanced by Respondents. Specifically, Respondents contend the Arbitrator manifestly disregarded the law because he (1) did not use the correct standard in determining whether rescission was appropriate; (2) improperly calculated damages where rescission was ordered; (3) ignored the integration clauses of the Franchise Agreement; (4) improperly applied the TCPA; and (5) exceeded his authority in finding Kyle and Klein Calvert jointly and severally liable for the award.

Vacating an award for manifest injustice is proper only "in the rare situation in which the

4

arbitrators 'dispense [their] own brand of industrial justice[.]'" Physicians Ins. Capital v. Praesidium All. Grp., 562 F. App'x 421, 423 (6th Cir. 2014) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). "To constitute a manifest disregard for the law, '[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent.'" Coffee Beanery, Ltd., 300 F. App'x at 418 (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995)). "Thus, an arbitrator acts with manifest disregard if '(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle.'" Id. "It is only when 'no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside.'" Physicians Ins. Capital, 592 F. App. at 423 (quoting Merrill Lynch, 70 F.3d at 421). In this case, Respondents have not come close to establishing the arbitrator acted in manifest disregard of the law.

**A. Standard Utilized by Arbitrator for Rescission**

Respondents first claim that the arbitrator erred in failing to find that Altruist established entitlement to rescission by clear and convincing evidence. The sole basis for this assertion is the arbitrator's failure to identify the standard he used in ordering rescission.

This argument fails at the outset because "'[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law.'" Elec. Data Sys. Corp. v. Donelson, 473 F.3d 684, 691 (6th Cir. 2007) (quoting Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000)).

The arbitration agreement between the parties in this case contained no requirement for detailed findings or conclusions. Rather, the arbitration clause set forth in Section 23.7 of the

5

Franchise Agreement states only that claims would be arbitrated in Davidson County, Tennessee, and that the "[t]he decision of the arbitrator will be final and binding upon the parties." (Doc. No. 1-1 at 45).[1]

This Court cannot and will not assume that the arbitrator failed to apply the clear and convincing standard simply because those words were not used in the award. Stonebridge Equity v. China Auto. Sys., Inc., 520 F. App'x 331, 337 (6th Cir. 2013) (stating that, where arbitrator knew review was *de novo* but failed to state she reviewed case under that standard, there was no showing of manifest disregard of the law because arbitrators are not required to explain their decision). Besides Respondents cannot show that clear and convincing evidence did not exist to support rescission because no transcript was ordered. See, Physicians Ins. Capital, 562 F. App'x at 423–24 (noting that it is "all but impossible" to determine if an arbitrator acted with manifest disregard for the law "in the event there is no transcript requested"); Samaan, 835 F.3d at 604 (citation omitted) ("'Where, as here, the party moving to vacate the award provides no transcript or record evidence, but presents only self-serving and conclusory allegations unsupported by any record evidence, it is impossible for this Court to determine that the [arbitration] Panel was guilty of misconduct.'").

**B. Damage Award and Rescission**

Respondents next argue that the grant of rescission by the arbitrator "makes no sense." (Doc. No. 13 at 7). Rather, pursuant to Smith v. Scott Lewis Chevrolet, Inc., 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992), "the proper award of damages under the TCPA would have been recovery of the purchase price," particularly because rescission was "expressly disavowed" in the Franchise

---

[1] Respondents' citation in their reply to the Scheduling Order before the arbitrator does not alter this conclusion. The Order merely required that "the form of award shall be reasoned." (Doc. No. 22-1 at 2). Whatever is meant by "reasoned," the award met that requirement, consisting as it did of 20 pages, including 3 pages of facts and 17 pages of discussion.

Agreement. (Id.).

Contrary to Respondent's position, the Franchise Agreement does not "expressly disavow" rescission as a remedy. The cited paragraphs, Section 24.4 and 24.5, simply state that the business involves risks, success is not guaranteed, and the franchisee did not receive or rely on representations regarding the likelihood of profits or success of the venture when entering into the Franchise Agreement.

Nor does Smith preclude rescission as a remedy. Quite the contrary, the Tennessee Court of Appeals wrote:

> In addition to actual damages, the Consumer Protection Act empowers a court to grant whatever relief it determines to be "necessary and proper." T.C.A. 47–18–109(a)(3). Rescission of a contract made as a result of an unfair or deceptive trade practice is a proper remedy available under the Tennessee Consumer Protection Act.

Smith, 843 S.W.2 at 13.

True, the Smith court went on to state that "[i]f a buyer seeks this remedy, it is entitled to recover the purchase price paid if the trial court rescinds the contract," id., and, therefore, the trial court did not err in so instructing the jury where the claim was that plaintiff purchased a pick-up truck that was not as represented. However, the Tennessee Supreme Court had earlier stated that "[i]t does not necessarily follow . . . that because refund of the purchase price is a common measure of damages upon rescission, it is the only amount which can ever be recovered by the complaining party." Isaacs v. Bokor, 566 S.W.2d 532, 538 (Tenn. 1978). This was confirmed again by the Tennessee Supreme Court in Mills v. Brown, 568 S.W.2d 100, 102–03 (Tenn. 1978) when the court observed that, while rescission "[u]sually . . . involves a refund of the purchase price or otherwise placing the parties in their prior status," a "purchaser who has been the victim of fraud or mistake

7

may recover, in addition to the purchase price, other damages which he may have incurred in good faith by reason of the mistake, such as cost of improvements and the like." Furthermore, the TCPA itself provides that, if an unfair or deceptive act was willful or knowing, a court "may provide such other relief as it considers necessary and proper[.]" Tenn. Code Ann. § 47-18-109(a)(3). In light of this authority, it can hardly be said that the arbitrator's decision to award damages beyond the purchase price of the franchise "fl[ew] in the face of clearly established legal precedent.'" Jaros, 70 F.3d at 421.

**C. Integration Clauses**

Next, Respondents argue that "the arbitrator disregarded clear Tennessee law on integration clauses," and, specifically, the integration clauses in the Franchise Agreement that provided:

> This Agreement, its exhibits and the documents referred to in this Agreement shall be construed together and constitute the entire, full and complete agreement between Franchisor and Franchisee concerning the subject matter hereof, and shall supersede all prior agreements. **No other representation oral or otherwise, has induced Franchisee to execute this Agreement, and there is [sic] no representations (other than those within the Franchisor's Medex Patient Transport, LLC Disclosure Document), inducements, promises or agreements, oral or otherwise, between the parties not embodied in this Agreement, which are of any force or effect with respect to the matters in or contemplated by this Agreement or otherwise.** No amendment, change or variance from this Agreement shall be binding on either party unless executed in writing by both parties. Nothing in this or any related agreement, however, is intended to disclaim the representations we made in the franchise disclosure document that we furnished to you.
>
> \*         \*         \*
>
> Franchisee represents and acknowledges **that it has not received or relied on any guarantee**, express or implied, as to the revenues, profits or likelihood of success of the Franchised Business. **Franchisee represents and acknowledges that there have been no representations by Franchisor's officers, directors, employees or agents that are not contained in, or are inconsistent with, the statements made in the Franchise Disclosure Document or this Agreement.**

(Doc. No. 22 at 5) (emphasis by Respondents) (quoting §§ 22.7 & 24.5 of Agreement).

The arbitrator found that Respondents timely submitted a Franchise Disclosure Document ("FDD") in accordance with the Franchise Rule of the Federal Trade Commission, 16 C.F.R. § 436. Among other things, a FDD requires the disclosure of bankruptcy by certain individuals within the preceding ten years, but Medex failed to disclose that Kyle Calvert had filed for bankruptcy on July 20, 2013. The arbitrator found this failure to be a material breach upon which Altruist reasonably relied, and supported its claim for fraudulent inducement. It was not error for him to consider evidence on this issue because the integration clauses specifically allowed Altruist to rely on the representations in the FDD.

Nor was it in violation of the integration clauses for the arbitrator to hear evidence on "back-office operations" provided by Medex. According to Susan Bigelow and two other franchisees, Kyle Calvert represented that Medex would handle all back-office operations, including fielding calls, scheduling, dispatching, and invoicing. Bigelow also stated that Kyle Calvert told her the back-office support was such that neither she nor Milkovich would need to work full-time to run the franchise. Thereafter, Altruist signed the franchise agreement.

As Medex points out, the integration clauses prohibit reliance upon "inducements, promises or agreements, oral or otherwise, between the parties not embodied in this Agreement." However, in the Franchise Agreement, Medex promised that, "in exchange for the Operations Fee, Franchisor shall operate a centralized service center to provide the following services to the Franchisee: (i) call center, (ii) centralized dispatch, (iii) route management, (iv) certain office function, (v) reporting invoices to Franchisee, and (vi) route efficiency planning and the mapping of trouble spots." (Doc. No. 1-1, Agreement § 14.3). Medex also promised to "use commercially reasonable effort to

provide these services . . . in the same <u>first-class</u> and <u>high-quality</u> as performed for Patient Transport Businesses operated by Franchisor or its Affiliates." (Id.) (emphasis added). Parol evidence used to determine whether the services provided by Medex were, in fact, "first class and high quality" does not violate the integration clauses.

In any event, "there is no rule that a merger clause makes reliance on oral representations unreasonable *per se* so as to necessarily defeat a fraudulent inducement or promissory fraud claim." <u>Shah v. Racetrac Petroleum Co.</u>, 338 F.3d 557, 568 (6th Cir. 2003); <u>see</u>, <u>Am.'s Collectibles Network, Inc. v. Sterling Commerce (Am.), Inc.</u>, No. 3:09-CV-143, 2016 WL 9132294, at *17 (E.D. Tenn. Sept. 7, 2016) (collecting Tennessee cases for the proposition that "integration clauses do not preclude fraud claims"). Indeed, "nothing suggests the Tennessee judiciary has either adopted or would adopt a *per se* rule that an integration clause makes it always unreasonable to rely on prior oral representations." <u>Id.</u> Thus, it cannot be said that the arbitrator "refused to heed" a legal principal that was "clearly defined and not subject to reasonable debate[.]" <u>Physicians Ins. Capital</u>, 592 F. App. at 423.

**D. Application of the TCPA**

Respondents also argue that the arbitrator manifestly disregarded the law by applying the TCPA, even though Altruist "did not point to any enumerated provision of the Act that it alleged was violated in its Amended Statement of Claim." (Doc. No. 13 at 11). While Respondents are correct that the TCPA's catchall provision in Tenn. Code Ann. § 47-18-104(b)(27) is only enforceable by the attorney general, the nature of Altruist's TCPA claim was hardly a mystery. In its Amended Statement of Claims, Altruist alleged that the TCPA is to be interpreted and construed in accordance with Section 5(A)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and

10

that Respondents engaged in "unfair and/or deceptive trade practices in connection with the sale of the franchise [by], among others: (a) affirmatively representing that Caliber had not [sic] bankruptcy or litigation disclosures in Item 3 and Item 4 of the FDD; (b) representing that the franchised business had characteristics and benefits that the business did not in fact, have; (c) representing that the business had particular qualities that it did not, in fact, have; (d) representing that the business had rights that it did not have; and (e) engaging in other acts an practices which were deceptive to Altruist . . . all of which are in violation of TCPA § 47-18-104(b)." (Doc. No. 13-5 ¶ 112). This was more than sufficient to place the TCPA claim before the arbitrator under the Commercial Arbitration Rules that requires that a claimant provide "a statement setting forth the nature of the claim including the relief sought and the amount involved." Commercial Arbitration Rule R-4.

Respondents also contend that, even if the TCPA claim was properly before the arbitrator, "there is absolutely no basis and no private cause of action in the state of Tennessee for a private plaintiff/claimant to enforce the Franchise Rule" of the FTC, and "[t]here is no private cause of action under the FTC Act." (Doc. No. 13 at 12-13). Maybe so, but "the TCPA, like the little FTC acts of many other states, explicitly provides that it is to be interpreted and construed in accordance with interpretations of 15 U.S.C.A. § 45(a)(1) by the Federal Trade Commission and the federal courts." Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

Regardless, the award was not based upon the Franchise Rule or the FTC. Quite the contrary, the arbitrator acknowledged "that a violation of the FTC Rule is not a *per se* violation of the TCPA," but found that Medex's misrepresentations about its "back office" services was both a misrepresentation of goods or services within the meaning of Tenn. Code Ann. § 47-18-104(b)(5), and a misrepresentation "that goods or services are of a particular standard, quality or grade" within

11

the meaning of Tenn. Code Ann. § 47-18-104(b)(6). Respondents have not shown that the arbitrator manifestly disregarded the law on this issue, either.

**E. Individual Liability**

Finally, Respondents argue that the arbitrator "manifestly disregarded the law and exceeded his authority" when he "ma[de] the conclusory assertion that, because Kyle and Klein were 'personally involved,' they should be personally liable for all damages." (Doc. No. 13 at 14). They then cite Tenn. Code Ann. § 48-249-114 for "[t]he general rule . . . that members of a limited liability company are not liable for the debts, obligations, and liabilities of the LLC." (Id.).

General rules, by definition, are subject to exceptions, and so it is here. The statute on which Respondents rely specifically states that "a member, holder of financial rights, director, manager, officer, employee or other agent may be personally liable by reason of such person's own act or omissions." Tenn. Code Ann. § 48-249-114(a)(2). Additionally, Tennessee's Limited Liability Rule specifically states that member, manager, employee or agent of a limited liability company "may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct." Tenn. Code Ann. § 48-217-101(a)(3). The arbitrator found that Kyle Calvert was personally involved in the decision to omit the bankruptcy from the FDD, and that this omission was so important that Klein Calvert should have known of it. The arbitrator also found that both were personally involved in the misrepresentations relating to back-office operation and support. This was sufficient for purposes of the FAA because, as stated previously, arbitrators are not required to explain their decisions absent a request for specific findings and conclusion.

**F. Attorney's Fees**

Altruist seeks the attorney's fees it incurred in these proceedings. Recognizing that "[t]he

12

FAA neither contemplates nor precludes an award of attorneys' fees" and that "a court may only award attorneys' fees if it is authorized by statute, or by the parties' contractual agreement," Crossbills Med. Oncology, P.C. v. Greenwood Sys., LLC, 610 F. App'x 464, 467 (6th Cir. 2015), Altruist seeks fees under both the Franchise Agreement and the TCPA. Neither provides a basis for fees in proceedings to confirm an arbitration award.

The "bedrock principle" of the American Rule says that "'[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise in 'specific and explicit' terms." Warren Drilling Co. v. Equitable Prod. Co., 621 F. App'x 800, 806 (6th Cir. 2015) (quoting Baker Botts L.L.C. v. ASARCO LLC, 135 S.Ct. 2158 (2015). Section 22.4 of the Franchise Agreement allows for fees only where fees are expended "to enforce the Agreement in a judicial or arbitration proceeding[.]" (Doc.1-1 at 42). Just as before the Arbitrator, Altruist is not seeking to enforce the Franchise Agreement. Quite the opposite, the validity of its success lies in the finding that rescission was an appropriate remedy.

Nor does the TCPA provide for an award of attorney's fees in this case. Under the TCPA, "upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs." Tenn. Code Ann. § 47–18–109(e)(1). The Tennessee Supreme Court has extended this provision "so as to allow an award of reasonable attorney's fees generated during an appeal." Killingsworth v. Ted Russell Ford, Inc., 205 S.W.3d 406, 409 (Tenn. 2006). It does not logically follow, however, that this can be further extended to confirmation proceedings.

The very same issue was presented to the Seventh Circuit in the context of arbitration and the Illinois Consumer Fraud Act. After noting the American Rule and "agree[ing] with the district

13

court that there is nothing in the Federal Arbitration Act which provides attorneys' fees to a party who is successful in seeking confirmation of an arbitration award in the federal courts," the Seventh Circuit observed:

> [Petitioner] contends we are focusing on the wrong statute. She points out that the arbitration panel awarded her attorneys' fees pursuant to the Illinois Consumer Fraud Act. She then observes that Illinois courts interpreting the Act have held it to authorize an additional award of attorneys' fees incurred in defending against an appeal. See Cange v. Stotler and Co., 913 F.2d 1204, 1211 (7th Cir. 1990) (relying on Warren v. LeMay, 142 Ill. App.3d 550, 96 Ill. Dec. 418, 491 N.E.2d 464 (1986)). We have noted that an award of appellate attorneys' fees in defending an appeal from a successful judgment under the Act is warranted because defending an appeal, like prosecuting the initial action at trial, "is a necessary prerequisite to recovery." Cange, 913 F.2d at 1211. [Petitioner] argues that, insofar as an action for confirmation, like an appeal, is a necessary prerequisite to recovering her arbitration award, she too is entitled to an additional award for attorneys' fees she incurred in commencing this confirmation proceeding.
>
> This comparison between a confirmation proceeding and an appeal ignores the district court's very limited role in a confirmation action brought under the Federal Arbitration Act. Unlike the usual civil appeal, where the successful party is usually defending the lower court's decision on the merits, an action for confirmation under 9 U.S.C. § 9 is intended to be a summary proceeding that merely makes the arbitrators' award a final, enforceable judgment of the court. See Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir.1986) (citations omitted). In fact, section 9 of the Act specifically states that the district court must confirm the award unless it finds that the award should be vacated, modified, or corrected pursuant only to specifically enumerated grounds in 9 U.S.C. §§ 10, 11. See 9 U.S.C. § 9; see also Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) (confirmation under the FAA is intended to be summary and can only be denied if award is corrected, vacated, or modified in accordance with the Federal Arbitration Act). The grounds given for vacating or modifying the arbitrators' award are limited solely to instances where the award was obtained through fraud or other misconduct, see 9 U.S.C. § 10(a)(1)–(5), or the award is miscalculated, based on a matter not submitted before the board, or is otherwise imperfect in form. See 9 U.S.C. § 11(a)–(c). The upshot of all this is that, notwithstanding any comparisons between taking an appeal and pursuing an action for confirmation, there is nothing in the Federal Arbitration Act itself that would authorize a district court to go beyond confirming an arbitrators' award and independently award additional attorneys' fees. In fact, since the Act "makes no provision for taking of evidence on an issue such as attorneys' fees, . . . the court [would be] powerless to receive evidence concerning attorneys' fees and award an[y] amount it would find appropriate." See Raytheon Co. v. Computer Distrib., Inc., 632

F. Supp. 553, 560 (D. Mass. 1986). Therefore, the district court was correct in refusing to bootstrap the Illinois Consumer Fraud Act's attorneys' fees provision into section 9 of the Federal Arbitration Act.

Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994).

Drawing heavily on Menke, the Sixth Circuit in Crossbills reversed an award of attorney's fees in arbitration confirmation proceedings, stating that Menke was "directly on point." 610 Fed. App'x at 470. Accordingly, and in the absence of any authority to support an award of attorney's fees under the TCPA for work performed in confirmation proceedings, Altruist's request for fees will be denied.

**G. Post-Judgment Interest**

That leaves post-judgment interest. In its Petition to Confirm Arbitration Award, Altruist seeks "post-judgment interest pursuant to Tenn. Code Ann. § 47-14-21." (Doc. No. 1 at 5). However, a judgment confirming an arbitration award is treated like any other federal judgment, 9 U.S.C § 13, and post-judgment interests on federal judgments are governed by 28 U.S.C. § 1961. Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 457 (5th Cir. 2013); Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1023 (9th Cir. 2004); see also, Willacy v. Marotta, 683 F. App'x 468, 477 (6th Cir. 2017) (stating that prejudgment is governed by state law, but post-judgment interest is "an issue controlled by federal law").

Section 1961 states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and sets forth the applicable rate. 28 U.S.C. § 1961(a). Further, the statute's "plain language" indicates that "post judgment interest properly runs from the date of the entry of judgment.'" Caffey v. Unum Life Ins. Co., 302 F.3d 576, 587 (6th Cir. 2002) (Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835 (1990). Thus, Altruist is entitled to post-

15

judgment interest in accordance with this federal statute, not Tenn. Code Ann. § 47-14-21.

## IV. Conclusion

For the foregoing reasons, the Petition to Confirm Arbitration Award will be granted and judgment will be entered on that award. Attorney's fees for these confirmation proceedings will be denied. Post-judgment interest shall be governed by 28 U.S.C. § 1961.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE